1  VENABLE LLP
   Michael B. Garfinkel (SBN 156010)
2  Justin J. Lowe (SBN 223847)
   Jennifer Levin (SBN 252420)
3  Email: mbgarfinkel@venable.com
          jjlowe@venable.com
4         jlevin@venable.com
   2049 Century Park East, Suite 2100
5  Los Angeles, CA  90067
   Telephone:   (310) 229-9900
6  Facsimile:   (310) 229-9901

7  Attorneys for Non-Party Respondent
   William Morris Endeavor Entertainment, LLC
8

9               UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11

12 | IT'S MY PARTY, INC. and IT'S MY PARTY AMPHITHEATRE, | CASE NO. 1:09-cv-00547-JFM |
   |---|---|
13 |   | DECLARATION OF VAHIK GHARIBIAN IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL RESPONSES FROM NON-PARTY WILLIAM MORRIS ENDEAVOR ENTERTAINMENT, LLC |
   | Plaintiff, |   |
14 |   |   |
   | v. |   |
15 |   |   |
   | LIVE NATION, INC. |   |
16 |   |   |
   | Defendant. |   |

17

LA: 282815/113527-282972                                    DECLARATION OF
                                                            VAHIK GHARIBIAN

1

I, Vahik Gharibian, declare as follows:

1. I am the IT Infrastructure Manager for William Morris Endeavor Entertainment, LLC ("WME"), and have been so employed since 2009. Prior to that time, I was the IT Infrastructure Manager for William Morris Agency, LLC ("WMA"), and had continuously worked in that position for 6 years. As the IT Infrastructure Manager for WME, and previously for WMA, I oversee the daily operations and maintenance of the information technology systems throughout WME's five offices, including WME's email systems, computer network, file server systems, electronic backup systems and individual workstations.

2. I understand that the subpoena duces tecum at issue to WME in the above-captioned action ("Subpoena") encompasses electronically stored information ("ESI") from 2003 to the present. Responding to the Subpoena will be exceedingly difficult for a number of reasons. First, due to the scope and time limitations described in the Subpoena, a search for responsive documents encompasses documents separately maintained in three distinct IT systems. Second, WME does not have sufficient IT resources to internally staff the ESI search and will need to rely upon third-party vendors to conduct the search. Each of these issues is further discussed below.

3. WME, and its current IT system, is the result of a 2009 merger between WMA and Endeavor Entertainment. Prior to the merger, both WMA and Endeavor maintained separate IT systems utilizing different software platforms ("Legacy WMA and Endeavor Systems"). After the merger, WMA and Endeavor consolidated their IT systems into a new, merged system ("WME System"). The scope and time frame described in the Subpoena requires WME to search all three IT systems (the Legacy WME and Endeavor Systems, and the WME System) in order to produce responsive documents.

4. Before the 2009 merger, WMA used the IBM Software Group Lotus Notes application as its primary email and calendar client, in conjunction with the Lotus Domino server system. Endeavor, on the other hand, used the Microsoft Outlook email

and calendar client in conjunction with the Microsoft Exchange 2003 server system. Both WMA and Endeavor engaged in periodic archiving of older emails on their systems by removing older emails from the mailboxes of individual users and into an archived server system.

5.   After the 2009 merger, WME adopted the Microsoft Outlook client and Exchange 2007 server system as its primary email and calendar system. WME maintains a total of 11 email servers throughout its five offices. WME also engages in periodic archiving of older emails on its system by removing older emails from the mailboxes of individual users and into an archived server system.

6.   In addition to its email servers, WME maintains separate file server systems for its electronic documents and other data. Likewise, WME maintains legacy file server systems for older WMA and Endeavor data. WME maintains a total of five file servers throughout its five offices. In all, the various email and file server systems maintained by WME, including the Legacy WMA and Endeavor Systems, encompass approximately seven terabytes of data for over 900 individual custodians.

7.   I am informed and believe that the Subpoena, as limited by Plaintiffs, demands production of ESI relating to 29 specific client artists. I am further informed and believe that, in order to produce documents responsive to the Subpoena, WME would need to search the data, including email and file server data across WME, WMA and Endeavor's systems from 2003 to the present, of at least 166 individual custodians. The average individual custodian uses approximately five gigabytes of data across WME's email and file servers for the stated time period. As a result, the Subpoena requires WME to search at least 830 gigabytes of data.

8.   The individual workstations of WME employees can contain additional data not stored on WME's email or file server systems. For example, if a custodian saved an electronic file directly to his or her desktop, the file would not be saved anywhere on WME's server system. Such data can only be retrieved by directly accessing the hard drive of each individual workstation.

9.   WME does not have the manpower or equipment to efficiently process electronic searches of its ESI without relying upon third-party ESI specialists. WME's current IT department is comprised of a total of 27 employees who are presently operating at or beyond capacity with simply maintaining the WME IT system. Searching WME's IT systems for data responsive to the Subpoena would require the full attention of a number of WME's IT staff over a prolonged period of time because the search process, particularly with respect to the Legacy WMA System, is inordinately cumbersome. To search the WME email and file servers, including the Legacy WMA and Endeavor Systems, we would need to process searches for various search terms individually across each system. Searches in WMA's Lotus Notes and Domino systems are particularly difficult and time consuming, given that WME's equipment only allows for individual searches to be conducted one at a time for each of the 166 custodians. Because of this, I estimate that the initial search and collection of potentially responsive data from WME's server systems alone would require on average four hours per custodian, which would total in excess of 600 employee hours to arrive at even a preliminary data set. This figure does not include time needed to search each of the work stations assigned to the 166 custodians, nor does it include time needed to restore and search WME's backup tapes, which would both significantly expand the amount of time needed to collect an initial data set. Furthermore, I understand and believe that the initial data set would subsequently need to be processed for duplicates, and reviewed for responsiveness, attorney client privilege and confidentiality, requiring many more hours of work. WME would not be able to dedicate the manpower or electronic equipment necessary to conduct the search without significantly jeopardizing the daily operations of WME's IT infrastructure for a prolonged period of time.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct. Executed this __17__ th day of September, 2010 in Beverly Hills, California.

Vahik Gharibian