1  VENABLE LLP
   Michael B. Garfinkel (SBN 156010)
2  Justin J. Lowe (SBN 223847)
   Jennifer Levin (SBN 252420)
3  Email: mbgarfinkel@venable.com
          jjlowe@venable.com
4         jlevin@venable.com
   2049 Century Park East, Suite 2100
5  Los Angeles, CA 90067
   Telephone:  (310) 229-9900
6  Facsimile:  (310) 229-9901

7  Attorneys for Non-Party Respondent
   William Morris Endeavor Entertainment, LLC
8

9                UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11

12 | IT'S MY PARTY, INC. and IT'S MY PARTY AMPHITHEATRE, | CASE NO. 1:09-cv-00547-JFM
13 |                                                    | DECLARATION OF THOMAS B. MCGUIRE, JR. IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL RESPONSES FROM NON-PARTY WILLIAM MORRIS ENDEAVOR ENTERTAINMENT, LLC
   |             Plaintiff,                             |
14 |                                                    |
   |        v.                                          |
15 |                                                    |
   | LIVE NATION, INC.                                  |
16 |                                                    |
   |             Defendant.                             |
17

18

19

20

21

22

23

24

25

26

27

28

LADOCS: 282747 / 113527-282972                     DECLARATION OF THOMAS B. MCGUIRE, JR.

1

I, Thomas B. McGuire, Jr., declare as follows:

1. I am the Head of Business Affairs for William Morris Endeavor Entertainment, LLC, a Delaware limited liability company with its principal place of business located in Beverly Hills, California ("WME"). WME is the successor entity to William Morris Agency, LLC ("WMA") and The Endeavor Talent Agency, LLC ("Endeavor"). Before the 2009 merger between WMA and Endeavor, I served as the Head of Business Affairs at Endeavor. I am providing this declaration in connection with the Joint Stipulation regarding Plaintiffs' Motion to Compel Production it response to its subpoena duces tecum served upon WME in November 2009 (the "Subpoena") in the lawsuit captioned *It's My Party, Inc. and It's My Party Amphitheatre, Inc. v. Live Nation, Inc.*, United States District Court for the District of Maryland, Northern Division, Civil Action No. 1:09-cv-00547-JFM ("Maryland Action").

2. WME is one of the largest talent agencies in the world, representing clients in a broad array of artistic disciplines, including motion pictures, television, theatre, personal appearances, publishing, commercials, sports, digital media, and video games. WME has offices in Beverly Hills, California; New York, New York; Nashville, Tennessee; and London, England.

3. WME is divided into several different departments. Of relevance to the Maryland Action is WME's Personal Appearance Department. As the name suggests, the Personal Appearance Department consists of agents who represent talent, like singers, musicians, comedians and lecturers, in connection with personal appearances, such as concerts, throughout the United States and throughout the world. During the relevant time period, the Personal Appearance Department represented approximately 500 clients and booked approximately 30,000 engagements per year.

4. Within its Personal Appearance Department, WME's clients are customarily serviced by two types of agents with respect to live performances – the Responsible Agent and the Booking Agent. The Responsible Agent is typically the agent who "signed" the artist as a WME client, and/or is assigned to the client, and is, therefore,

one of the artist's primary contacts at WME. Oftentimes, there is more than one Responsible Agent per client. The Booking Agent, sometimes referred to as a Territorial Agent, is responsible, often with other agents at WME, for specific territories or regions in which the artist may be booked for an engagement. Thus, for example, if WME Client such as Sheryl Crow is booked for a concert at Radio City Music Hall in New York City, there are at least two WME agents involved – Sheryl Crow's Responsible Agent(s) and the Booking Agent(s) responsible for covering the territory which may include Detroit, Michigan. In some instances the Responsible Agent and the Booking Agent are the same person. Based upon a review of records of the Personal Appearances Department, WME estimates that approximately 80 agents within its Personal Appearance Department who worked on engagements for the 29 WME clients identified by Plaintiffs. Each of the agents is assisted by at least one administrative assistant. Accordingly, WME estimates that there are at least 160 document custodians who may possess documents responsive to the Subpoena.

5. The agents in WME's Personal Appearance Department are responsible for negotiating the deal terms for the personal appearances of the artists they represent. In addition to negotiations regarding the venue for each artist's personal appearance, WME's agents often negotiate the particulars of an artist's appearance at the venue and promoter. While WME sometimes negotiates national tour deals on behalf of clients that encompass all appearances for a given tour, the vast majority of the personal appearance contracts negotiated by WME on behalf of its clients consist of individual appearances at a single venue, or regional agreements for an artist to appear at several venues within a particular geographic region.

6. The Personal Appearances business is highly competitive, and WME agents rely upon their relationships with local promoters, concert buyers and venues and their experience and knowledge of specific regional markets and artistic genres to negotiate favorable terms on behalf of their clients. The details of agreements negotiated by WME including specific terms obtained by WME as a result of its skill and competitive position

in the marketplace, the requirements and preferences of WME's clients, and WME's network of regional contacts throughout the country constitute highly confidential and sensitive commercial information that is subject to protection from disclosure as trade secrets. WME has taken care not to release such information to the general public, WME's competitors and interested parties like Plaintiffs and Live Nation, who frequently negotiate on the other side of the table from WME, in order to preserve its competitive advantage in the marketplace.

7. Moreover, the details of personal appearance agreements negotiated by WME maybe subject to contractual confidentiality protections that legally preclude WME from disclosing the substance of negotiations relating to the agreement or the final terms included therein. Additionally, as a fiduciary of its clients, WME is careful not to disclose the personal, private and confidential information about its clients without their prior consent.

8. I am familiar with the manner in which the Personal Appearances Department maintains its files and records, which is consistent with how WMA had done so prior to the merger. WMA agents historically maintained separate physical files for each personal appearance negotiated on behalf of its clients. Typically, the Responsible Agent(s) and the Booking Agent(s) separately maintained physical files for each engagement, meaning that there are often two files for each engagement. These files were maintained in the WMA office where the agent is based. The contents of each file vary depending on the particular personal appearance agreement and the record-keeping habits of the particular agent assigned to the appearance. While some agents maintain hardcopy documents and correspondence within their physical files, some agents rely more heavily on electronic mediums such as email. Accordingly, the physical files of the Personal Appearance Department range in size depending on the particular agent maintaining the file, and the complexity of the agreement and related negotiations.

9. WME agents are responsible for maintaining their files and archiving dormant files every six months. Files sent out for archiving are maintained at third-party,

off-site archival facilities in each of the cities where WME maintains an office. WME maintains a master list of files sent out for archiving. The vast majority of the physical documents encompassed by the Subpoena is maintained in off-site archival storage and will be difficult and costly for WME to retrieve, review and produce.

10. As a result of the manner in which WME stores its Personal Appearance Department records, there is no convenient way to limit its retrieval of documents called for by the Subpoena. The documents are not stored according to a specific venue, specific region, specific artist, or specific date range, or by "national, block-booked or multi-appearance concert tours."

11. I am familiar with the Subpoena served by Plaintiffs upon WME and the broad categories contained therein. WME preliminarily estimates that it would need to retrieve at least 1,300 bankers' boxes of files from various off-site storage locations throughout the country in order to produce physical documents responsive to the Subpoena. Of course, the retrieval would only be the beginning of the arduous process of responding to the Subpoena. WME and its outside counsel would then need to scan and cull through the massive amount of documents to find those files that initially seem responsive to the Subpoena. WME and its outside counsel would then need to meticulously review each document in each of the remaining files for responsiveness, privilege and confidentiality. Needless to say, this process would place a tremendous burden on WME, not only in the form of out-of-pocket costs, but also the loss of man hours.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct. Executed this 17th day of September, 2010 in Beverly Hills, California.

_____
THOMAS B. MCGUIRE, JR.