1  VENABLE LLP
   Michael B. Garfinkel (SBN 156010)
2  Justin J. Lowe (SBN 223847)
   Jennifer Levin (SBN 252420)
3  Email:mbgarfinkel@venable.com
        jjlowe@venable.com
4        jlevin@venable.com
   2049 Century Park East, Suite 2100
5  Los Angeles, CA  90067
   Telephone:    (310) 229-9900
6  Facsimile:    (310) 229-9901

7  Attorneys for Non-Party Respondent
   William Morris Endeavor Entertainment, LLC

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  | IT'S MY PARTY, INC. and IT'S MY PARTY AMPHITHEATRE, | CASE NO. 1:09-cv-00547-JFM |
    |---|---|
13  | | **DECLARATION OF JUSTIN J. LOWE IN OPPOSITION TO** |
    | Plaintiff, | **PLAINTIFFS' MOTION TO COMPEL** |
14  | | **RESPONSES FROM NON-PARTY** |
    | v. | **WILLIAM MORRIS ENDEAVOR** |
15  | | **ENTERTAINMENT, LLC** |
    | LIVE NATION, INC. | |
16  | | |
    | Defendant. | |
17

18

19

20

21

22

23

24

25

26

27

28

2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900
VENABLE LLP

1

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

I, JUSTIN J. LOWE, declare and state as follows:

1.      I am an attorney admitted to practice in the State of California and before this Court, and am an associate at the law firm of Venable LLP.  I am one of the attorneys primarily responsible for representing Non-Party William Morris Endeavor Entertainment, LLC ("WME") with respect to the discovery dispute in the above-captioned action.

2.      Plaintiffs It's My Party, Inc. ("IMP") and It's My Amphitheater, Inc. ("IMA") served the subpoena duces tecum at issue herein ("Subpoena") on WME in November 2009.  Thereafter, WME timely served objections to the Subpoena, including objections for irrelevance, overbreadth, undue burden, confidentiality, and privilege.  See Declaration of Rachel Robbins ("Robbins Decl."), Ex. K.

3.      Plaintiffs and WME met and conferred regarding the Subpoena and WME's objections, but what occurred during those discussions is mischaracterized by Plaintiffs.  In several telephone conferences with Plaintiffs' counsel, I and other attorneys at my firm, explained the incredible burden the Subpoena would place upon WME based upon the breadth of the requests and considering how WME maintained its hardcopy and electronically stored documents.  We further pointed out that the Subpoena was particularly unfair since Plaintiffs had not sought these documents from defendant Live Nation.  In response, Plaintiffs only offered to limit the requests to 29 specific WME clients and "the details regarding the negotiations leading up to all national, blocked booked and/or multi-appearance touring agreements" between the 29 clients and Live Nation from January 1, 2006 through the present.  On February 17, 2010, my office sent a letter to Plaintiffs' counsel explaining in some detail why these limitations would not materially lessen the burden on WME.  See Robbins Decl., Ex. P.  In that letter, we further proposed that Plaintiffs withdraw their Subpoena, focus their discovery efforts on Live Nation, and then if they still required documents from WME, "serve a more narrowly tailored subpoena at that time."  Plaintiffs never responded to that letter.  Instead, more than six months passed without any word from Plaintiffs.  Then, to my

1    surprise, in August 2010, we received Plaintiffs' completed discovery motion, which was

2    the first communication I received from Plaintiffs since our discussions concluded in

3    February.

4        4.    In connection with my firm's representation of WME in the above-

5    captioned dispute, we obtained copies of an August 25, 2009 letter filed by Plaintiffs'

6    counsel at the outset of this action setting forth the "limited" scope of Plaintiffs' discovery

7    from the PACER system.  A true and correct copy of the August 25, 2009 letter is

8    attached hereto as Exhibit "A."

9        5.    In order to analyze the difficulty and expense associated with responding to

10   the Subpoena we retained a third-party consultant specializing in electronic discovery

11   collection, processing and digital forensics to consult with WME's internal IT staff

12   regarding the details of WME's IT infrastructure and the probable impact of the

13   Subpoena.  After discussions with WME's IT staff, the third-party consultant provided a

14   written scope and estimate for the work required to collect and process documents

15   responsive to the Subpoena.  The written estimate is attached hereto as Exhibit "B."

16       6.    After the initial collection and processing of data, WME will need to

17   review the documents for responsiveness, privilege and confidentiality.  Given the nature

18   of WME's communications with its clients, many documents contain commercially

19   sensitive but, otherwise, irrelevant information that WME will need to redact prior to

20   production.  Additionally, given the provisions of the Stipulated Protective Order in this

21   action, WME would need to evaluate whether the responsive documents should be

22   stamped "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" pursuant to the terms of

23   the Order.

24       7.    Even assuming that the third-party vendor culls a generous 70% of

25   documents during its initial collection and processing, WME would still need to review

26   over 199 gigabytes of data (approximately 1,992,000 documents), which would require in

27   excess of 43,160 hours assuming a review rate of 60 documents per hour.  Thus, if WME

28   elects to utilize the document review services of the third-party ESI consultant at $60 per

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1   hour, the document review alone would cost in excess of $2.5 million.  If WME utilized

2   outside counsel to perform the review at $300 per hour, which is the average hourly rate

3   of junior associates at my firm, the cost of the review would increase five-fold to $12.5

4   million.

5          I declare under penalty of perjury under the laws of the State of California and the

6   United States that the foregoing is true and correct.  Executed this 17th day of September,

7   2010 in Los Angeles, California.

8

9                                                    _____

10                                                   JUSTIN J. LOWE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

EXHIBIT "A"



## COZEN
## O'CONNOR

A PROFESSIONAL CORPORATION

1900 MARKET STREET   PHILADELPHIA, PA 19103-3508   215.665.2000   800.523.2900   215.665.2013 FAX   www.cozen.com

**Robert W. Hayes**
**Direct Phone** 215.665.2094
**Direct Fax** 215.701.2094
rhayes@cozen.com

August 25, 2009

**BY ECF**
Honorable J. Frederick Motz
United States District Judge
United States District Court for the District of
Maryland
Baltimore Division
101 West Lombard Street
Baltimore, MD 21201

Re:   It's My Party, Inc. v. Live Nation, Inc.
   Civil Action No. JFM-09-547

Dear Judge Motz:

While we hesitate to add to the argument on a discovery plan in the above-referenced matter, we are compelled to correct the mischaracterization in Live Nation's August 20, 2009 correspondence to the Court of plaintiffs' position on the scope of discovery.

Live Nation characterizes plaintiffs' contention that the scope of discovery must include all of the national or multi-appearance tours Live Nation promoted as inviting the Court to allow plaintiffs to conduct a "fishing expedition through all of Live Nation's documents in all geographic regions in order to see if there is an anticompetitive pattern or practice." (Chul Pak's August 20, 2009 correspondence to the Court, p. 2.) This characterization ignores the context in which plaintiffs advised that they require discovery relating to all Live Nation national or multi-appearance tours. Plaintiffs' contended that they required this discovery to demonstrate that artists participating in Live Nation promoted national or multi-appearance tours only played in Live Nation controlled amphitheatres or other such venues. (Robert Hayes' August 19, 2009 correspondence to the Court, p. 6.) Rather than requiring the production of all Live Nation documents in all geographic regions, this discovery would require the production of only three discrete pieces of information: (i) an identification of all national or multi-appearance tours of artists Live Nation promoted in the 2006 through 2009 concert seasons; (ii) a tour schedule for each such artist for those concert seasons; and (iii) an identification of all amphitheatres or other

Honorable J. Frederick Motz
August 25, 2009
Page 2

such venues Live Nation owns, operates or at which it has exclusive booking rights. Live Nation cannot reasonably suggest that this information is not readily producible, or that it would be required to search all of its documents in all geographic regions to do so.

While plaintiffs will seek additional information regarding Live Nation national or multi-appearance tours, this production will be relatively confined. Plaintiffs will generally seek discovery of the manner in which the venues for the tour were selected, such as any negotiation of promotional or venue services contracts and the contracts themselves. We certainly envision no need to seek discovery of the tours themselves, such as the staging of each concert, that would generate the vast majority of documents relating to any tour. Further, we understand that Live Nation only entered into national or multi-appearance promotional tour agreements with artists of sufficient popularity to fill amphitheatres to, at least, a significant portion of their capacity. As plaintiffs allege in the Complaint, there are no more than one hundred such artists of this level of popularity, and only a portion of these artists tour at any one time.

Live Nation also complains that plaintiffs have not suggested any limit on the number of document custodians. (Pak August 20, 2009 correspondence, p. 2.) Plaintiffs did not suggest limits on the number of individuals whose files would be searched because there is no basis for Live Nation to limit its searches to the files of specific individuals. *See e.g.*, Oracle Corp. v. SAP AG, 566 F.Supp.2d 1010, 1014 (N.D. CA 2008) (requiring party to search centralized repositories as well as the files of individual employees in response to document requests); Lawson v. Sun Microsystems, Inc., No. 1:07-CV-0196-RLY-TAB, 2007 WL 2572170, at *3 (S.D. Ind. Sept. 4, 2007) (overruling objection that responding to document requests would increase number of document custodians whose files must be searched where requests sought relevant information). There is also no basis to limit set arbitrary limits on the document custodians whose files will be searched, divorced of consideration of the number of employees likely to have relevant information. While courts encourage parties to agree upon the employees whose files will be searched, without some understanding of Live Nation's organizational structure, plaintiffs cannot meaningfully participate in this process. That being said, as the information plaintiffs seek was likely handled at a corporate (rather than the venue) level, we find Live Nation's suggestion that plaintiffs are seeking discovery that would require searching the files of thousands of employees to be hyperbolic at best.

EXHIBIT "A"

Honorable J. Frederick Motz
August 25, 2009
Page 3

_____

     Live Nation is overstating the burden of producing the discovery plaintiffs seek in this matter.  Defendant should not be permitted to use the desire to limit discovery costs to deny plaintiffs of evidence of Live Nation's wrongdoing.

                    Respectfully yours,

                    COZEN O'CONNOR

                    By:    Robert W. Hayes

cc:    Franklin M. Rubinstein, Esquire
       Jonathan M. Jacobson, Esquire
       Chul Pak, Esquire
       Renata B. Hesse, Esquire
       Charles E. Biggio, Esquire
       (All by email)

EXHIBIT "A"
8

EXHIBIT "B"

# Integreon

## Integrated Discovery Services Estimate
Prepared September 1, 2010 for Venable WME project

### Assumptions

| Forensics | | |
|---|---|---|
| Number of custodians | 166 | custodians |
| Imaging location | on location | |
| Number of collection sites | 4 | locations |
| Approx. number of hard drives required to store collecte data | 2 | hard drives |
| Assumed number of collections to perform at each location | 41.5 | |
| Number of collections each analyst can perform in a day | 3.3 | |
| Total number of days analysts will need to spend on collections | 49.8 | |
| Number of analysts that will be deployed to each location | 2 | |
| Number of days forensic team will be at each location | 6.2 | |
| Travel and expenses (Beverly Hills, one analyst already present in LA) | $2,500.00 | per person |
| Travel and expenses (New York, one analyst already present in NY) | $3,000.00 | per person |
| Travel and expenses (Miami) | $2,500.00 | per person |
| Travel and expenses (Nashville) | $2,000.00 | per person |
| Volume of data that will be collected for each custodian | 5.0 | GB |
| Resulting data from collections | 830.0 | GB |

**Early Case Assessment (Clearwell)**

| | |
|---|---|
| Incoming data volume | 830.0 GB |
| Data volume after expansion | 913.0 GB |
| Data remaining after de-duplication | 664.0 GB |
| Number of batches incoming data will be split into for load purposes | 1 load |
| Percentage of data that will be culled out using ECA | 70% |
| Volume of data that will be exported for review | 199.2 GB |
| Number of users | 5 users |
| Duration of hosting | 6 months |

**Document Review Database (eView)**

| | |
|---|---|
| Volume of data in review database | 199.2 GB |
| Number of documents in review database | 1,992,000 docs |
| Percentage of documents that will be marked for production | 25% |
| Number of TIFF images in database (including production TIFFs) | 3,984,000 images |
| Number of users | 45 users |
| Duration of hosting | 8 months |

**Managed review**

| | |
|---|---|
| Review rate if using standard linear review | 60 docs per hour |
| Review labor total (without QC) | 33,200.0 hours |
| QC time allotment | 30% |
| Total review labor required (including QC) | 43,160.0 hours |

**Professional Services**

| | |
|---|---|
| Preservation and collection consulting | 4 hours |
| Project management | 10 hours |
| Tech time | 20 hours |

# ▦ Integreon

## Integrated Discovery Services Estimate

Prepared September 1, 2010 for Venable WME project

### Pricing

| Forensics | |
|---|---|
| On location forensic collection from servers | $2,500.00 per day |
| Hard drive media | $150.00 each |
| Idle time during on-location collections | $225.00 per hour |
| Travel time and expenses | TBD (client reimburses) |

| Electronic File Processing and Production | |
|---|---|
| TIFF conversion with bates labeling | $0.03 per page |
| OCR | $0.02 per page |

| Early Case Assessment (Clearwell) | |
|---|---|
| Data load fee (first load is free) | $500.00 per load |
| Native data intelligence processing | $350.00 per GB |
| Reviewer licenses (first 5 are free) | $50.00 each, per month |
| Data hosting | $40.00 per GB, per month |

| Document Review Database (eView) | |
|---|---|
| ECA to review tool bridge | $150.00 per GB |
| Concept clustering engine ingestion | $150.00 per GB |
| Reviewer licenses (first 5 are free) | $50.00 each, per month |
| Data hosting | $40.00 per GB, per month |
| TIFF hosting (e.g., production images) | $0.005 per page, per month |

| Managed review | |
|---|---|
| Onshore managed document review | $60.00 per hour |

| Professional Services | |
|---|---|
| Preservation and collection consulting | $375.00 per hour |
| Tech time | $195.00 per hour |
| Project management | $195.00 per hour |

# ▓▓ Integreon

## Integrated Discovery Services Estimate

Prepared September 1, 2010 for Venable WME project

**Estimate**

| Forensics | Price | Unit | Quantity | Total |
|---|---|---|---|---|
| On location forensic collection from servers | $2,500.00 | per day | 50 | $125,000.00 |
| Hard drive media | $150.00 | each | 2 | $300.00 |
| Travel and expenses (Beverly Hills, one analyst already present in LA) | $2,500.00 | per person | 1 | $2,500.00 |
| Travel and expenses (New York, one analyst already present in NY) | $3,000.00 | per person | 1 | $3,000.00 |
| Travel and expenses (Miami) | $4.00 | per person | 2 | $8.00 |
| Travel and expenses (Nashville) | $2,000.00 | per person | 2 | $4,000.00 |
| **Total** | | | | **$134,808.00** |

| Electronic File Processing and Production | Price | Unit | Quantity | Total |
|---|---|---|---|---|
| TIFF conversion with bates labeling | $0.03 | per page | 3,984,000 | $119,520.00 |
| **Total** | | | | **$119,520.00** |

| Early Case Assessment (one-time charges) | Price | Unit | Quantity | Total |
|---|---|---|---|---|
| Data load fee (first load is free) | $500.00 | per load | 1 | $0.00 |
| Native data intelligence processing | $350.00 | per GB | 913 | $319,550.00 |
| **Total** | | | | **$319,550.00** |

| Early Case Assessment (monthly fees) | Price | Unit | Quantity | Total |
|---|---|---|---|---|
| Reviewer licenses (first 5 are free) | $50.00 | each, per month | 5 | $0.00 |
| Data hosting | $40.00 | per GB, per month | 664 | $26,560.00 |
| **Total** | | | | **$26,560.00** |

| Document Review Database (one-time charges) | Price | Unit | Quantity | Total |
|---|---|---|---|---|
| ECA to review tool bridge | $150.00 | per GB | 199 | $29,130.00 |
| **Total** | | | | $29,130.00 |

| Document Review Database (monthly fees) | Price | Unit | Quantity | Total |
|---|---|---|---|---|
| Reviewer licenses (first 5 are free) | $50.00 | each, per month | 45 | $2,000.00 |
| Data hosting | $40.00 | per GB, per month | 199 | $7,968.00 |
| TIFF hosting (e.g., production images) | $0.005 | per page, per month | 3,984,000 | $19,920.00 |
| **Total** | | | | $29,888.00 |

| Managed Review | Price | Unit | Quantity | Total |
|---|---|---|---|---|
| Onshore managed document review | $60.00 | per hour | 43,160 | $2,589,600.00 |
| **Total** | | | | $2,589,600.00 |

| Professional Services | Price | Unit | Quantity | Total |
|---|---|---|---|---|
| Preservation and collection consulting | $375.00 | per hour | 4 | $1,500.00 |
| Project management | $195.00 | per hour | 10 | $1,950.00 |
| Tech time | $195.00 | per hour | 25 | $4,875.00 |
| **Total** | | | | $8,325.00 |

EXHIBIT "B"

# ⠿Integreon

## Integrated Discovery Services Estimate
Prepared September 1, 2010 for Venable WME project

**Cost Summary**

| Service type | Price | Quantity | Total |
|---|---|---|---|
| Forensics | $134,808.00 | 1 | $134,808.00 |
| Electronic file processing and production | $119,520.00 | 1 | $119,520.00 |
| Early case assessment (one-time charges) | $319,550.00 | 1 | $319,550.00 |
| Early case assessment (monthly fees) | $26,560.00 | 6 | $159,360.00 |
| Document review database (one-time charges) | $4.00 | 1 | $4.00 |
| Document review database (monthly fees) | $29,888.00 | 8 | $239,104.00 |
| Managed review | $2,589,600.00 | 1 | $2,589,600.00 |
| Professional services | $8,325.00 | 1 | $8,325.00 |
| **Total** | | | **$3,570,271.00** |

### Total Discovery Cost Breakdown

- ■ Forensics
- ■ Electronic file processing and production
- ▨ Early case assessment (one-time charges)
- ■ Early case assessment (monthly fees)
- ▧ Document review database (one-time charges)
- ▨ Document review database (monthly fees)
- ▨ Managed review
- ▨ Professional services

EXHIBIT "B"